UNITED STATES of America ex rel. John Michael GALASSO, Petitioner,

v.

COMMANDING OFFICER, U. S. ARMY, etc., et al., Respondents.

No. 70 C 1382.

United States District Court,
E. D. New York.

Dec. 11, 1970.

James B. Zane, New York City (Zane & Zane, New York City, of counsel) for petitioner.

Robert Rosenthal, New York City (Edward R. Neaher, U. S. Atty., of counsel) for respondents.

## MEMORANDUM INCORPORATING FINDINGS OF FACT and ORDER

DOOLING, District Judge.

Petitioner, an Assistant District Attorney in the office of the District Attorney of Nassau County, New York, was inducted into the Armed Forces on November 5, 1970, by the Respondent Commanding Officer at Fort Hamilton, Brooklyn, New York. He thereupon obtained an order to show cause why a writ of habeas corpus should not be issued to inquire into his retention in the United States Army and to effect his release from it. His central contention is that his induction was unlawful because of procedural irregularities amounting to a denial of due process incident to his final classification of 1–A and the issuance of the induction order and the final fixing of his induction date.

Petitioner was born December 26, 1944, and registered in the Selective Service System in December 1963. He was classified as 2–S in January 1964

and continued in that class until August 1966 when he was classified 1–A. In November of 1966 he was classified 1–Y and in September of 1967 was again classified 2–S, a classification in which he continued until September 11, 1969, when he was classified 1–A.

On June 8, 1969, Petitioner graduated from St. John's Law School with a degree of Bachelor of Laws. He had earlier completed four years of college majoring in history and political science and received a Bachelor of Arts degree at C. W. Post College of Long Island University. After Petitioner, on September 12, 1969, received his 1–A classification he wrote under date of September 20 advising the Board that he had accepted employment with the Nassau County District Attorney's office in a law enforcement capacity and that he believed this entitled him to a 2–A classification similar to that of a policeman. At the time, as his current status report disclosed, he was studying for the bar examination in a regular study course. He was advised that his employer would have to submit a request in writing in order for the Board Members properly to evaluate the file. Under date of September 21, 1969, Petitioner addressed a communication to President Nixon setting forth his position and requesting presidential intervention. On October 3, 1969, the Local Board transmitted his file to the State Director at the instance of State Headquarters. Under date of October 7, 1969, State Headquarters addressed the Director of National Headquarters advising that the registrant had been classified 1–A on September 11 and had both a right of personal appearance and appeal. The State Director's office advised further that the registrant's letter to the President had been forwarded to the Local Board as a letter of appeal and that in the circumstances Headquarters was not warranted in taking further action. Petitioner under date of October 8 requested a personal appearance and stated that he would then submit matter relevant to his health, employment and other matters affecting his classification. The Local Board set November 18, 1969, at 9:50 P.M. as the interview time for Petitioner's personal appearance.

At the meeting on November 18, 1969 with the members of the Local Board Petitioner was present for about fifteen minutes and presented a letter from the District Attorney of Nassau County and also a typewritten memorandum to the Board supporting his claim for a different classification.

The letter from the district attorney presented by Petitioner at the November 18 meeting recited that Petitioner had recently passed the bar examination and was awaiting admission to practice, that he had been interviewed by the district attorney for a position as assistant district attorney, that because of his background and personality it had been decided to make him a staff member as soon as he was admitted to practice, which would be within a few weeks, and that it had been most difficult to find young lawyers willing to dedicate themselves to public service especially at the salaries offered; the district attorney stated that in the interest of the people of the county and in furtherance of the administration of criminal justice he thought it most important that Petitioner be available for the appointment. Petitioner's own memorandum of the same date specified four sorts of physical conditions which he regarded as handicapping for military service, presented his position in connection with his expected admission to the bar, and referred to the district attorney's letter in support of the application for a 2–A classification. Four members of the Board and the Government Appeal Agent were present; the Petitioner was put under oath and asked to tell what classification he thought he was entitled to and why. Petitioner said simply that he thought he was entitled to a 2–A classification, referred to his file papers and stated that he had asked for a personal appearance on both his physical and employment status. The Board advised him that it was not in a position to evaluate medical data and suggested that he present them to the Board for

due processing. Asked whether he had a letter from the district attorney with regard to the occupational deferment, he presented the letter. The Board indicated that it thought the letter inadequate in failing directly to request a deferment and that a specific request for deferment on the ground that the Petitioner was essential to the operation of the district attorney's office was required. The Board Member then said that the file would be presented to the Advisory Committee to determine whether Petitioner's job was one that should be considered essential in the national interest. The Form 7 prepared as a result of the meeting indicated that a specific request for deferment was presented on November 20 and the form indicates that Petitioner was advised of his appeal rights. The file contains a letter dated November 19 and received on November 20 from the district attorney reiterating that Petitioner would be employed as an assistant district attorney as soon as he was admitted to practice and then the district attorney made the following request: "Because of the importance of the position of Assistant District Attorney and because of the lack of qualified men for the position, I respectfully request that Mr. Galasso be deferred from military service so that he may be available to accept this appointment which should come about within the next few weeks." The district attorney's letter did not contain the specific language indicated by the Board, that is, that Petitioner was "essential to the operation of his office" but it is not certain that the Petitioner understood that those words embodied a definite requirement. *Cf.* 32 C.F.R. § 1622.23(a) (3).

On November 21, 1969, the cover sheet was forwarded to State Headquarters "for transmittal to the appropriate Scientific Advisory Committee" and for the State Director's review and advice "Re: Employment in Nassau County District Attorney's office". The file was sent back under date of November 25, 1969, with the remark "This case is not an appropriate one for processing by the Advisory Committee." The file was returned on November 28, and on December 11 the Board determined by three affirmative no negative votes that the request for a deferment would be denied and Petitioner was classified 1–A. On the next day he was mailed a notice of classification together with a statement describing his appeal rights and right of personal appearance. The Selective Service file gives no indication of the precise grounds on which the denial of a 2–A classification was put and the statement has been made that there is no minute which expands on the simple statement appearing on the cover sheet that the request for deferment was denied.

■ Petitioner contends that at this point he was denied a job evaluation by the State Advisory Committee by reason of the action of the State Director in deciding that the case was not one appropriate for processing by the Advisory Committee. Petitioner argues that the specific request for such action by the Local Board and the failure to comply with that request on the part of the State Director deprive Petitioner of that to which he was entitled under Administrative Bulletin No. 1.100 of May 4, 1962, which indicated that the State Advisory Committee had been set up to provide information and advice to the State Director and to Local Boards concerning the utilization and the essentiality of scientific, engineering and other specialized personnel outside the medical profession.

There is no validity in Petitioner's contention on this point. The fair interpretation of what was said was that the Advisory Committee was not adapted or fitted to pass on the essentiality of a lawyer's work in the office of a District Attorney. The easy inference is that the Advisory Committee was industrially and scientifically oriented and that its work had to do with scientific, engineering and similar

technical skills rather than with the learned professions.

It remains, however, that the action of the Local Board on the application when the file was returned to it is entirely inscrutable. A 2–A deferment requires satisfaction of three specific conditions: *First*, that the registrant is engaged in the activity, *second*, that the registrant cannot be replaced because of a shortage of persons with his qualificatons or skill, and, *third*, that removal of the registrant would cause a material loss of effectiveness in the activity involved. It is not determinable whether the Local Board considered that none of these conditions was satisfied or that some one was not satisfied. So in an immediate sense the Petitioner was deprived of the opportunity to present additional evidence that would meet any deficiency that the Board had found in his presentation.

On December 19, 1969, Petitioner was admitted to practice and thereafter, in the latter part of December 1969, he was sworn in as an Assistant District Attorney, Nassau County. Petitioner advised the Local Board of these facts (as new matter) in his appeal letter of January 6, 1970. Under date of January 7, 1970, the District Attorney's office wrote the Local Board that it wished to appeal the decision denying petitioner an occupational deferment and the letter stated that Petitioner had been employed by the District Attorney's office "in an essential and non-replaceable capacity." The letter stated that for the County to lose Petitioner's services would be detrimental to the interest of the people and that the Petitioner had been personally selected by the District Attorney because of his particular qualifications and his background. The cover sheet docketed one or both letters as a request for a personal appearance, and under date of February 3, 1970, the Board addressed to Petitioner a notice requesting his attendance at the next meeting to be held February 26, 1970, at 7:30 P. M. as a "Procedural right" appearance under Section 1624.1 of the

Regulations for the purpose of determining classification.

The Form 7 filed under date of February 27, 1970, with respect to the appearance of February 26, 1970, indicates that it was of five minutes duration and the submission of a further letter dated February 24, 1970 from the District Attorney was noted. The letter advised the Board that

"For reasons of security, Mr. Galasso is under strict orders from me, not to reveal the contents or nature of his work with the District Attorney's Office.

"To be helpful to the Board, however, I will list the areas in which Mr. Galasso has been connected since he started his employment. Mr. Galasso has dealt with either in court (trial) or pre-court (investigatory) work in the following criminal areas: narcotics, organized crime, civil disobedience, and youthful offenders.

"I cannot impress upon you too greatly the importance of his position with the District Attorney's Office, as well as the importance of continuing his position with this office."

The Board was asked on behalf of the County and the District Attorney to give further consideration and weight to the request for an occupational deferment.

At the meeting the Petitioner was asked whether he was seeking the 2–A on the same basis as when he was present in November and he was reported to have answered in the affirmative. When he was asked if he had anything new to add he answered the District Attorney had requested that if the Board had any question the District Attorney would be glad to come down to the Local Board and talk to it. Registrant added that he understood that only registrants might appear. The Petitioner was asked whether he had passed the bar, and he is reported as having said that he had done so on December 17. (This was incorrect; he had passed the bar earlier and had been admitted to the bar on

December 19. His answer to the question was evidently misunderstood.)

The Petitioner was then classified 1–A, 4 votes to none, and the classification notice was sent both to the Petitioner and to the District Attorney.

Under date of March 3 the Petitioner appealed the classification on the ground that he was entitled to an occupational deferment. Meanwhile, on a review of the papers in the file Petitioner was found acceptable for induction from a physical point of view. On April 23 the cover sheet of Petitioner was sent to the Chairman of the Eastern District Appeal Board.

Under date of April 28, 1970, the Appeal Board again classified Petitioner 1–A with four affirmative and no negative votes. (The cover sheet reported the vote as five to one.) Neither the February 26 classification as 1–A nor the disposition of the appeal on April 28, 1970, was accompanied by any specification of the ground on which the application was rejected.

By letter of May 15 directed to the Director of Selective Service at New York State Headquarters as well as to Local Board No. 3 Petitioner sought to initiate an appeal to the President, pursuant to Section 1627.1, arguing that by earlier rulings the same local board had granted occupational deferments to persons similarly situated and that Petitioner held a vital position in the District Attorney's Office. Under date of May 18, 1970, the District Attorney wrote to the Director of Selective Service at State Headquarters requesting that an appeal be taken to the National Appeal Board against the denial of the occupational deferment to Petitioner. The letter recited that the Petitioner had been with the District Attorney for five months, was currently involved in several criminal matters particular to him and under his complete jurisdiction involving the safety and well being of residents of Nassau County and that to lose Petitioner's services now "would mean an irretrievable setback and a loss of months of work and investigation."

The District Attorney asserted that his staff research had found that occupational deferments had been granted to individuals occupying the position of assistant district attorney by local boards and by the State Board. Moreover, he asserted, Petitioner's function extended beyond the Assistant District Attorney level. The District Attorney asked the Director to do everything necessary to accomplish the appeal and that a copy of his letter be forwarded to the National Board. The District Attorney sent a copy of the letter to the Local Board.

Under date of May 20, 1970, by letter to Petitioner with copy to the District Attorney, the State Director advised Petitioner that review of his file revealed that there had been no denial of any procedural rights, that his case had been adjudicated in accordance with "current Selective Service Regulations", and that further action by the State Director's office would not be warranted.

An entry on the cover sheet with respect to a Board meeting on May 21, 1970, states that the additional information submitted did not warrant a change in classification, and it was indicated that this had been determined by a vote of four to nothing. Petitioner was so advised by a letter of May 22, 1970, the first paragraph of which stated that at its meeting on May 21, 1970, "the Board reconsidered your file based on the additional information submitted by your employer." The reference is evidently to the copy of the District Attorney's letter to the State Director of May 18, 1970. There appears to be no record of Board action other than the docket entry on the cover sheet and the letter of May 22.

Under date of June 12, 1970, the Board mailed Petitioner an order for induction and a direction to report on July 2, 1970. (The order did not indicate the place of reporting or the hour.) Under date of June 17, 1970, the District Attorney's office urgently requested a delay in induction in order to

enable Petitioner to wind up his pending matters in an orderly way. Reiterating what had been earlier said, the letter added that Petitioner's loss would "mean a severe handicap to this office. I am requesting that this letter be considered an Appeal of the utmost urgency, to defer Mr. Galasso from military service because of his vital and integral position with this office." On June 17 Petitioner himself asked for a reasonable extension of time in order to enable him to terminate his duties of office and investigations. Under date of June 19 induction was postponed until the first induction call in August (Section 1632.2).

Under date of June 25 the District Attorney sent a letter to the State Headquarters addressed to Colonel Brokaw confirming a telephone conversation and asserting that Petitioner had received more than six months of individual specialized training to qualify him to conduct major organized crime investigations dealing with the importation and first sale of large quantities of hard narcotics and was conducting such investigations and gaining invaluable trial experience in misdemeanor cases. The District Attorney stated that Petitioner had been trained in the narcotic terminology, and that his loss would mean the loss of contacts developed by him, would materially jeopardize the outcome of the cases committed to his care, and would lose to the District Attorney's office the contacts with confidential informants which Petitioner had himself developed and his contacts with undercover men engaged in international narcotic traffic. The District Attorney stated that Petitioner's unique experience, knowledge and training "cannot be replaced and it would take law enforcement six months to properly train a replacement, if one were available * * *." The District Attorney noted that Petitioner's application predated the Presidential decision to cancel occupational deferments. He asserted that it was vital and essential that Petitioner be deferred from military induction and that to lose the Petitioner would mean a tremendous setback to the County and an irreplaceable loss to the District Attorney's office.

Under date of June 30 the file was again sent to headquarters. On July 6 the file was returned from headquarters. The State Director by letter to the District Attorney advised him that he had again reviewed the registrant's Selective Service file to determine whether any action would be warranted to reopen and reconsider the registrant's classification and that after review of the file the State Director was of opinion that Petitioner had been properly classified by the Local Board and the Appeal Board and that a Presidential Appeal would not be warranted. The Director concluded that since Petitioner had not been denied any procedural rights, no further action was being taken by headquarters to defer his induction. The file was then returned to the Local Board with a copy of the State Director's letter to the District Attorney.

In the interval before August 10 Petitioner was re-examined medically by Fort Hamilton, and his medical file was reviewed by the Surgeon General; it was concluded in August that Petitioner was from the medical viewpoint acceptable and qualified for induction into the Armed Services. However, under date of August 6, 1970, induction was postponed until the examining authorities determined Petitioner's acceptability; apparently the reports of medical fitness were not received at the local board until after October 21,·1970, and under date of October 23, 1970, Petitioner was directed to report for induction on November 5, 1970.

Under date of October 29, 1970, the District Attorney wrote a letter to the local board which was received on October 30 referring to his previous application for an extension of Petitioner's deferment and he urgently requested that the deferment be continued. He explained that under instructions of the State Judicial Conference and of the

Appellate Division, Second Department, and of the Administrative Judge of the County of Nassau, his office had embarked upon a crash program designed to reduce the backlog of criminal cases awaiting indictment and trial. He stated that seven additional Justices had been assigned to the trial of criminal causes and that in addition a grand jury was being impanelled which would hold night hearings commencing November 4, 1970. He stated that as a result the services of every available man in the District Attorney's office were required to meet the exigencies of the project and that there would be an increase in normal caseload from two to three times. He stated that any reduction in work force in the period would seriously prejudice the office's efforts to function properly and might significantly damage the program. It was stated that it was extremely important that the office be able to count on the continued presence of Petitioner in the office and the District Attorney concluded that the request was made not only on his own behalf but on behalf of the people of the County. A Report of Information in the file of Petitioner indicates that on October 30, 1970, the Selective Service office

"Contacted Panel Chairman and Board Members regarding Corres. rec'd 10/30/70 from Dist. Atty. William Cahn.

"Chairman & member feel Registrant had been given every consideration and further delay has not been approved."

The "Source of Information for the report is given in the one word "Board." A further Report of Information in the file on the same date indicates that a Local Board official spoke to Colonel Meader in the office of the State Director regarding the District Attorney's letter of October 29 and that Colonel Meader recommended that the cover sheet be forwarded to his attention. The cover sheet indicates that the file was so forwarded but the file contains no record of any action by the Local Board at this point. Under date of October 30 a letter was sent by the Executive Secretary of the Local Board to the District Attorney advising him that his letter of October 29

"has been carefully considered by the Board.

"It was their determination that the delay of Mr. Galasso's induction not be approved."

Petitioner reported for induction and was inducted on November 5, 1970.

Action on the latest application for a re-classification terminated in the action taken by the Board on May 21, 1970. The action then taken was manifestly considered by the Local Board as a refusal to re-open and not as a classification which would have revived the Petitioner's appeal rights. Properly, judicial review in the present case is concerned only with the May 21st action of the Board and its earlier actions. The later actions had nothing to do with classification but were exclusively concerned with postponement of induction. It is unnecessary therefore to consider the argument mounted on the basis of the Board's failure to consider the October 29 letter of the District Attorney concerning the new situation in his office resulting from the crash program affecting criminal cases and it is unnecessary to consider whether the informal mode of communicating with some or all of the members of the Local Board could be considered proper Board action in the premises. Since under Section 1625.-2 there was no written request to re-open and consider anew the classification of the registrant, it is unnecessary to consider whether the facts presented were such as to have coerced re-opening at that late date if the material had been presented in support of a claim for reopening.

To take the points of criticism in time order, Petitioner complains that there was an inexcusable delay in presenting his appeal of March 3, 1970, to the Appeal Board. The argument is that in the interval between the taking of the ap-

peal and its determination by the Appeal Board the President had announced the cancellation of occupational deferments. Petitioner contends that his case was prejudiced because his claim for occupational deferment was reviewed at a time when the Appeal Board realized that the policy on the issue had been reversed.

The appeal letter of March 3 was received at the Local Board on March 5, the Local Board sent the file to the Appeal Board under date of April 7, and the Appeal Board received it on April 8. Section 1626.14 provides that the registrant's file shall be forwarded to the Appeal Board immediately after the period provided in Section 1626.2(c) for taking an appeal has elapsed and the Local Board has complied with the provisions of Section 1626.13, but in no event shall the file be forwarded later than five days after the period for taking an appeal has elapsed. Section 1626.2(c) provides in substance that the registrant or his employer in such a case as the present one may appeal within thirty days after the date the Local Board mailed to the registrant a Notice of Classification. Under Section 1626.13(a) the Local Board is required to prepare the individual appeal record on Form No. 120 in duplicate immediately upon an appeal being taken to the Appeal Board. Since the Notice of Classification was sent on February 27 the thirty days provided for forwarding the file under Section 1626.14 expired on March 29, 1970, a Sunday, and the Board was probably free to forward the file either March 30 or March 31. Under Section 1626.14 its responsibility was to do that "immediately" after the thirty day period had elapsed, and within five days after the period had elapsed. The file therefore should have been sent forward on April 3 or 6 and it could therefore have been somewhere between one and four days late.

■ From the point of view of Petitioner's contention of prejudice the delay is not significant, and the point advanced is not valid in the circumstances. That the delay contravened the regulations does appear, but the Board's delay could neither invalidate nor require allowance of the appeal, and no prejudice to Petitioner flowed from it. The time scheduling prescribed by the regulations appears to be related to securing orderly internal procedures and regularity in the flow of papers and it is not substantive in its effect in any sense. The point made with respect to delay in the perfection of the appeal to the Appeal Board is without merit.

Petitioner argues that the Local Board in fact re-opened and reconsidered his application for an occupational deferment in May and he refers to the May 21 action and the letter of May 22 advising him of the action taken.

The action taken on May 21 had not been requested by the Petitioner or by the District Attorney. They had not requested a re-opening and had not presented a fresh application for classification in 2–A. The Local Board acted on its own motion in re-considering the matter and the very brief note in the cover sheet of what occurred indicates that their attention was directed to the letter of the District Attorney to the State Director dated May 18, a copy of which had been received by the Board. The Local Board has the power to re-open on its own motion under Section 1625.2 but only as such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification. Viewed against the explicit language of Section 1625.2 the Local Board action on May 21 constituted a determination that the registrant's classification should not be re-opened.

■ Petitioner argues that the action of the Board, was an actual re-opening or alternatively that there should have been a re-opening because of the nature of the submissions on which the Board acted. However, the submissions of May 18, 1970 not only were specifically not requests for re-opening or reconsideration of the issue of clas-

sification by the Local Board (since they were addressed to the State Director and were intended to persuade the State Director to initiate a Presidential appeal or an appeal to the "National Board" (Section 1604.6)) but the letters of May 18, 1970, did not present facts not considered earlier. The letters intensify the tone of the earlier submissions but they add nothing specific and new. In consequence, Petitioner does not bring himself within the principle of Mulloy v. United States, 1970, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362, which requires that the registrant present non-frivolous allegations of facts that have not been previously considered by his Board and which, if true, would be sufficient under regulation or statute to warrant granting the requested classification; only in such circumstances must the Board re-open the classification—in the absence of a refutation of the assertions by other reliable information in the registrant's file. The course of action required of the Board when new facts have not been presented, or if it concludes that any new facts presented are insufficient to warrant the change in classification, is outlined in Section 1625.4; the Board followed it in the present case, despite the absence of a formal request to re-open. Under Section 1625.4 where the Board reaches the conclusion for the reasons indicated that re-opening is not in order, it must advise the person filing the request "that the information submitted does not warrant the re-opening of the registrant's classification" and is required to place a copy of that letter in the registrant's file. The regulation continues, "no other record of the receipt of such a request and the action taken thereon is required." Here the Board used the expressions "reconsidered your file" and "did not warrant a change in your classification" rather than stating simply that the additional information did not warrant the re-opening of the registrant's classification; the difference in phraseology is trivial and does not reflect a difference in adminis-

trative action. No re-opening and reclassification into the same class took place. No classification notice was sent out. The Board surveyed the submission for its adequacy to warrant a re-opening and found it insufficient. See Paszel v. Laird, 2d Cir. 1970, 426 F.2d 1169, 1173, including footnote 6.

Petitioner appears to argue in his brief that there was no basis for a refusal to grant an occupational deferment. If the employment was such as to entitle him as a matter of law to an occupational deferment, then of course Petitioner's motive for entering the employment would not matter. His being in the employment would satisfy the manpower policy implicit in the Selective Service System and expressed in the occupational deferment regulation. But Petitioner's application for an occupational deferment was supported only by robust assertion rather than by evidence. Granting that Petitioner showed actual engagement in activity as an assistant district attorney, there was no evidence that he could not be replaced because of a shortage of persons with his qualifications or skill in the activity, or that his removal from his tasks would cause material loss of effectiveness in the activity. Petitioner had not become a member of the bar until December 19, 1969. He was apparently employed as soon as he was admitted to the bar, and on February 26 he had been a member of the bar for just over two months. In late May, when re-opening was rejected, he had been a lawyer for only five months. In a word, he was a neophyte lawyer, and, while it may be assumed from the assertions made on his behalf by the District Attorney that he is a lawyer of abilities, it is not shown and it is not possible to accept unsupported assertions that Petitioner is irreplaceable or that his loss to the District Attorney's office would result in a material loss of effectiveness in the office activity. Irreplaceability and loss of office effectiveness were questions upon which the Local Board had to form a conclusion on the basis of its

interview with Petitioner and its appraisal of the assertions by the District Attorney. It could readily conclude that the District Attorney in ultimate substance had said only that the Petitioner was equal to his work, was learning his tasks, and had already become and was increasingly becoming engaged in work which if he left would have to be turned over to others, with resultant loss in efficiency. So much is generally true of professional occupations, and it evidently occurs whenever a lawyer is pressed into service from a public law office.

■■ There remains then only the question whether the Local Board was required to articulate the ground of its determination that Petitioner was not entitled to an occupational deferment. The regulation, Section 1622.23(a) states that a registrant's employment shall be considered necessary to the maintenance of the national health, safety or interest (which is the statutory language) only when all of three conditions exist: *first,* that the registrant is engaged in the activity, *second,* that the registrant cannot be replaced because of the shortage of persons with his qualifications or skill in the activity and, *third,* that the removal of the registrant will cause a material loss of effectiveness in the activity. If denial of the deferment were put on one or another of the three conjunctive factors, then a person in the Petitioner's situation could, in theory, determine whether or not there was evidence that he could bring forward to satisfy the Board on the point which it raised against the granting of the deferment. *Cf.* Capobianco v. Laird, 2d Cir. 1970, 424 F.2d 1304, 1306–1307; Paszel v. Laird, 2d Cir. 1970, 426 F.2d 1169, 1175. United States v. St. Clair, E.D.N.Y.1968, 293 F. Supp. 337, 341. See Ferrell v. Selective Service Local Board No. 38, 2d Cir. 1970, 434 F.2d 686. While Petitioner's contention has general validity and a succinct statement of the essential ground of the Local Board's decision is always useful when the matter comes up

for judicial review, in such a case as the present one the existence or nonexistence of a basis in fact for the Board's classification can be determined adequately for the purpose of effecting allowable judicial review. The absence of any specific finding by the Board indicates that in determining whether entitlement to a deferred classification was made out, the statements of fact before the Board must be taken as having been accepted as correct. The facts before the Board were so meager, however, and their failure to make out a *prima facie* case by the standards of the regulation, Section 1622.23(a), so evident, that the Board's rejection of the request for an occupational deferment in generalized terms was adequate procedurally. Petitioner's inexperience and relatively brief tenure in the District Attorney's office, together with the absence of anything to support the quantifiable point of irreplaceability by reason of a shortage of persons with similar qualifications or skills, sufficed to preclude a conclusion that a *prima facie* case for occupational deferment had been made out. If the Local Board had acted on the erroneous assumption that the State Director had ruled that Petitioner's employment was of a kind that could not be found to entitle a registrant to deferment, that might have presented a ground for remanding the matter to the Local Board for its independent determination of Petitioner's entitlement to an occupational deferment under the statute and regulation, but on the whole record it does not appear that the Board misapprehended the State Director's meaning or failed to make its own evaluation. There was not in the record uncontradicted *prima facie* evidence of entitlement to a deferment (*cf.* Application of Kanas, 2d Cir. 1967, 385 F.2d 506, 508) and there was factual support for the assigned classification. Estep v. United States, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567; Maynard v. United States, 9th Cir. 1969, 409 F.2d 505; United States v. Buckner, 10th Cir. 1969, 415 F.2d 1175, 1177.

It follows that plaintiff is not entitled to a writ of *habeas corpus*, and it is accordingly

Ordered that the petition for a writ of *habeas corpus* is dismissed and the writ is denied, and the restraining order contained in the original order to show cause issued herein is vacated but the vacatur is stayed for five days in order to enable Petitioner to make an application to the United States Court of Appeals for the Second Circuit for a continuance of stay in the event Petitioner decides to appeal from the present determination.