UNITED STATES of America, Plaintiff,

v.

Donald Edward BEAULIEU, Defendant.

No. 72–CR–1045.

United States District Court, E. D. New York.

April 30, 1973.

Robert A. Morse, U. S. Atty., for plaintiff by Thomas Maher, New York City, of counsel.

Michael N. Pollet, New York City, for defendant.

ZAVATT, Senior District Judge.

Defendant moves to dismiss the indictment against him upon the grounds that: (1) the refusal of his local board to permit him (a conscientious objector classified I–O, as such) to perform his offered civilian alternative service was unlawful and based upon legally unauthorized criteria; (2) the refusal of the local board to classify him II–A was without a basis in fact.

The defendant was indicted on August 29, 1972, for failing to report for the commencement of civilian alternative service, as ordered by Local Board No. 4 (Board), following his classification as a conscientious objector. Defendant was classified on February 11, 1965 in class IV–D (divinity student); was re-classified I–A (available for military service) on August 11, 1966; was re-classified II–A (deferred because a student at St. Pius X Seminary) on October 13, 1966; was re-classified II–S (student deferment) on November 9, 1967; was reclassified I–O (a conscientious objector, pursuant to 50 U.S.C. App. § 456(j) and 32 C.F.R. § 1622.14) on July 8, 1968. On this last date, defendant was present at a meeting with his Board and indicated his desire to take his alternative service at an institution or a hospital. One of the Board members advised him to come back to the Board office "during the day to review list of institutions, and select the type of service." He failed to do so. On September 20, 1968, he was ordered to report for an Armed Services physical examination. On September 23, 1968, the defendant started working for the New York City Department of Social Services as a caseworker. He reported for an Armed Services physical examination on October 7, 1968 and was found qualified for service in

the Armed Forces. On October 28, 1968, the Board mailed the defendant its Statement of Acceptability for military service (DD Form 62).

On October 30, 1968, the Board mailed to the defendant SSS Form 152, a special report form for Class I–O registrants, one of the purposes of which is to afford to a registrant, classified as a conscientious objector, the opportunity to designate three types of alternative civilian employment which he offers to perform in lieu of induction into the Armed Forces. 32 C.F.R. § 1660.20(a) requires a registrant in Class I–O to submit to his local board three types of civilian work which he is qualified to do and which he offers to perform in lieu of induction into the Armed Forces, within 10 days after a Statement of Acceptability (DD Form 62) has been mailed to him by his local board. This form contained the following information:

"By submitting a choice of employment you have an opportunity to select the work which you will be more interested in and perhaps best qualified to do.

In the event you have applied to one of the approved employers for work and have a definite answer to your application you should show this in Series II on the form. The local board cannot secure special skilled positions for you. However, it will be the policy of the Selective Service System whenever possible to order you to civilian work which will most fully utilize your experience, education and training." [1]

The defendant did not comply with 32 C.F.R. § 1660.20(a). Instead of submitting to the Board three types of civilian work, he submitted only one type, "Social Work," and advised the Board in Form SSS 152 that he had applied to

---

[1]. 32 C.F.R. § 1606.51(a) provides that "All forms and revisions thereof referred to in these . . . regulations, and all forms and revisions thereof prescribed by the Director of Selective Service shall be and become a part of these regulations in the same manner as if each form, each provision therein, . . . were set forth herein in full."

the "Dept. of Social Services—City of New York, Division of Personnel, 220 Church St. N.Y. N.Y." for "casework" employment and that his application has been accepted. He enclosed a letter to the Board stating:

"In regard to the selection of suitable alternative service, I feel very strongly that my present position with the NYC Dept. of Social Services allows me to contribute much to the national interest and welfare. There is a great deal that we can do to lessen the crisis in the city. I would be willing to volunteer for alternative service in this specific capacity if you will approve the job before hand."

Form SSS 152 and the above accompanying letter were received by the Board on November 14, 1968.

The Board mailed to the defendant its letter, dated January 13, 1969:

"Since you have not offered to perform appropriate civilian work within the meaning of selective service regulations for the purpose of fulfilling your civilian work obligation, this local board is submitting to you three types of civilian work which it deems appropriate for you to perform and which meet criteria set forth in selective service regulations.

| Type of Work | Agency |
| --- | --- |
| Welfare | Albany Home for Children, New Scotland Ave. Albany, New York 12208 |
| Hospital | Blythedale Children's Hospital, Valhalla, New York 10595 |
| Institutional | Syracuse State School, 800 South Wilber Ave. Syracuse, New York 13201 |

You are to notify this local board, by letter, within 10 days that you of-fer, or do not offer, to perform one of the types of work offered."

There is nothing in the Selective Service file to indicate what the Board meant when it stated that the defendant had not "offered to perform appropriate civilian work within the meaning of selective service regulations . . . ." Did it mean that the defendant had failed to state three types of alternative civilian work as required by 32 C.F.R. § 1660.-20(a) or did it mean that his offer to perform civilian work in the community in which he resided was contrary to C.F.R. § 1660.21(a), which then provided:

"No registrant shall be ordered by the local board to perform civilian work in lieu of induction in the community in which he resides unless in a particular case the local board deems the performance by the registrant of such work in the registrant's home community to be desirable in the national interest."

The Board's designation of three alternative civilian jobs at Valhalla, Albany and Syracuse seems to indicate that the Board was designating jobs outside of the community in which the defendant resided without considering the "unless" provision of 32 C.F.R. § 1660.21(a) but, rather, in compliance with Local Board Memoranda Nos. 64 and 98 issued by the Director of Selective Service.[2] These memoranda were held to be inconsistent with 32 C.F.R. § 1660.21(a) and invalid in Horey v. Tarr, 470 F.2d 775 (2d Cir. 1972).

By letter dated January 20, 1969, the defendant declined to accept any of the three specific jobs offered by the Board:

"Concerning your suggestions for my two-years' alternative service, I

2. Local Board Memorandum No. 64 provided, in part: "Whenever possible the work should be performed outside the community in which the registrant resides. The position . . . should constitute a disruption of the registrant's normal way of life somewhat comparable to the disruption of a registrant who is inducted into the Armed Forces."

Local Board Memorandum No. 98 provided, in part: "Always there must be an effort to see that the path of the conscientious objector in being processed for and performing civilian work parallels as nearly as possibly the path of the I–A man in his processing for and performance of military duty . . . his assignment should be beyond commuting distance from his home."

feel quite strongly that my present position as a caseworker with the N. Y. C. Department of Social Services affords me the greatest opportunity to serve the 'national interest', in the concrete terms of the ghetto poor. I therefore cannot accept your three suggestions. I will include additional reasons and letters shortly. I hope you will give my request your fullest and most careful consideration. I thank you.

Peace,

/s/ Donald E. Beaulieu"

In a letter dated March 26, 1969, Col. John Brokaw, Deputy State Director of Selective Service, advised the Board to hold a meeting on April 24, 1969, pursuant to 32 C.F.R. § 1660.20(c) for the purpose of settling upon a proper civilian employment for the defendant,[3] and stated that the procedure to be followed at that meeting was outlined in Local Board Memorandum No. 64.[4] By letter dated March 28, 1969, the Board requested the defendant to attend a Board meeting on April 24, 1969, stating that "the State Director, or a representative appointed by him, will meet with you and the members of this Local Board to offer his assistance in reaching an agreement on the type of work which should be performed by you in lieu of induction." Before that meeting was held, the Board received two letters from unit supervisors of the New York City Department of Social Services in support of the defendant's request to perform his civilian work there and also a lengthy letter from the defendant in which he insisted that the one type of work he had offered to perform with the New York City Department of Social Services was the only civilian employment which would most fully utilize his experience, education and training[5] within the ambit of the policy of Selective Service declared in SSS Form 152:

"Considering the crises that now face our cities, the position of Caseworker must be deemed as truly in the national interest. . . . The importance of such services to families who require help cannot be overemphasized . . . . This position as a Social Worker offers me the opportunity to put to the fullest use all the benefits of my education—in dealing each day with poor people in need, who most often have nowhere else to turn: mothers with dependent children, the aged, the crippled. Conversely, I have absolutely no training for or experience in the areas of work offered to me by the Board, i. e., hospital work . . . . Secondly, and perhapse [sic] most importantly, my interest is in working for this Dept., in the ghettos of this city. I am firmly convinced that it is here where I can be most effective, and best serve the national interest, *simply beacuse* [sic] *I like this work very much.*" (emphasis added).

The minutes of the Board meeting of April 24, 1969, record the presence of the defendant, the full Board and Mr. C. Harrington, a representative of the State Director. A Board member stated that the Board wanted to "refresh their

---

3. 32 C.F.R. § 1660.20(c) provides in part: "If the local board and the registrant are unable to agree upon a type of civilian work which should be performed by the registrant in lieu of induction, the State Director of Selective Service for the State in which the local board is located, or the representative of such State Director, appointed by him for the purpose, shall meet with the local board and the registrant and offer his assistance in reaching an agreement. . . ."

4. See note 2, *supra.*

5. In his SSS Form 152, dated November 13, 1968, the defendant had stated his education beyond high school as follows:

| | | |
|---|---|---|
| St. Pius X College | Classics Theology | 2 yrs: A. A. degree |
| Fordham University | Classics Philosophy | 2 yrs: B. A. degree |
| Universita di Milano Rome, Italy | Classics Archaeology | 6 credits |
| Fordham University Graduate School | Classics | 6 credits in progress |

memories on the case." Another member stated that "they can not remember each case and possibly they could have made a mistake", in classifying the defendant I-O. Mr. Harrington stated that the "Local Board has the right to classify him as they see fit." Mr. Harrington was then asked to leave the meeting. The Board then questioned the defendant about his religion (Catholic) and what tenets of the Catholic religion are opposed to war. The defendant referred the Board to his SSS Form 150, dated June 13, 1968, in which he had stated to the Board his reasons for a conscientious objector classification.[6] The Board reviewed that form and questioned him further. He was then asked if he would accept a IA-O classification, i. e., induction in the Armed Forces for noncombatant military service. 32 C.F.R. § 1622.11. The defendant stated that he would not wear a uniform. Then, Mr. Harrington was recalled into the meeting. He advised the Board that the purpose of the meeting was to try and reach an agreement with regard to civilian work and that, if the Board saw fit, it could consider the defendant's job in the Department of Social Services as a request for an occupational deferment. The defendant stated that "he wanted his job with Social Services to be considered as his civilian work." The Board advised the defendant "that they do not feel he is eligible for the classification I-O." Mr. Harrington was asked to leave the meeting and did not return. The defendant's case was reconsidered by the Board and "It was the unanimous decision of the Board that his classification be 1A. An agreement in regard to civilian work was not reached and the registrant's classification was reopened."

On May 5, 1969, the defendant submitted to the Board his summary of the meeting of April 24th. It parallels generally the Board's minutes. It adds the contentions that (1) the Board suggested the possibility of a II-A classification (occupational deferment, 32 C.F.R. § 1622.22(a)); (2) the defendant stated that he did not seek or want such a classification; (3) after Harrington left the room, the Board referred to him as "a son of a bitch"; (4) the Board advised the defendant that it had made a mistake in classifying him I-O and refused to elaborate further.

The defendant met with a Government Appeal Agent on July 29, 1969 and with the Board on August 14, 1969. At this Board meeting, the defendant advised the Board that he had been employed by the Department of Social Services of the City of New York since September 23, 1968 and was still so employed; that, under a new contract he would earn $8,200.00 a year. A Board member advised him that the Board maintained a list of appropriate civilian jobs which it would approve and called his attention to the fact that hospital workers earn only $60.00 per week. The Board refused to reclassify the defendant I-O. Whereupon, the defendant consented to accept civilian employment in a hospital. Thereupon, the Board reclassified the defendant I-O, and mailed formal notice of that classification to the defendant the following day.

---

6. In that questionnaire he based his status of conscientious objector "primarily on the fundamental teachings of the New Testament, quoting Matthew 5:6; 5:39; 5:44; 22:37-40; 25. He admitted that the "Roman Catholic Church has no official position on war as such" and referred to the history of the Church and its "two currents of thought on war; the belief in pacifism and the belief in the 'just war'"; traced the development of the just war theory to "the fourth century, in the time of Sts. Augustine and Ambrose" "which was later developed by the medieval theologians, St. Thomas Acquinas and Suarez." He went on to assert that he has "rejected the 'just war' theory" and stated that "even if the just war theory were valid in itself, its conditions cannot be met by a modern war in which violence is pursued with little regard for innocents (Dresden, Hiroshima), and in which whole countries must be destroyed in order to achieve victory (Germany, South Viet Nam.)"

On August 26, 1969, the Board mailed a second SSS Form 152 (special report for class I–O registrants) to the defendant who executed the same and, for the first time, listed therein three alternative types of civilian employment which he offered to accept: (1) as a caseworker with the New York City Department of Social Services (his present job); (2) as a dishwasher at Grasslands Hospital, Valhalla, N.Y.; (3) unspecified work at the Cardinal McCloskey School and Home, White Plains, N.Y. The Board received this executed SSS Form 152 on September 15th. On that same day, the Board received the defendant's letter, dated September 10, 1969, requesting the Board (1) to reconsider approval of his social service work with the Department of Social Service or (2) to reclassify him II–A and (3) to grant him a "courtesy interview" and an appointment with the Board's Government Appeal Agent; that, if his request for a II–A classification was denied, he be granted an appeal. He also stated in that letter that, if he should be retained in Class I–O, he would submit to civilian work at Grasslands Hospital.

He met with the Government Appeal Agent on October 9, 1969. On December 1, 1969, the Board mailed him a notice to appear before it on December 11th. Having failed to so appear, he was continued in Class I–O.

On Christmas Eve, 1969, the defendant mailed a letter to the President of the United States, enclosing his Selective Service Certificate of Registration and his Notice of I–O Classification:

"I can no longer cooperate with the Selective Service System . . . . I have realized for some time that continued cooperation with the Selective Service System violates my belief that war is unequivocally immoral. . . . I can no longer cooperate with a System whose purpose it is to make war and to kill. The position of remaining classified as a conscientious objector does not meet the problem of the evil of war and of the Selective Service System which supports it. . . . I hesitated for some time to take this position. I recognize the need for citizens of a land to obey the laws of that land and to use the legal means established for the redress of grievances. I wondered whether this level of civil disobedience is appropriate and justified. I am fearful at the prospect of a prison sentence. I believe, however, that the enormity of the crimes we perpetrate daily in Viet Nam must be met by a corresponding level of resistance at home. Civil disobedience is not without precedent in our land. Secondly, I believe that the oppressive nature of the Selective Service System must again be challenged in the courts, on a number of constitutional grounds. *I will therefore be unable and unwilling to perform the alternative service now required of me.*" (emphasis added)

Despite his purported disassociation from the Selective Service System, the Board granted his appeal from its denial of his request for a II–A classification and so notified him by letter dated February 10, 1970. The Board of Appeals affirmed his I–O classification on March 10, 1970 and the defendant was so notified by letter dated March 16, 1970. By letter dated March 27, 1970, the Board submitted to the defendant three types of appropriate civilian work: institutional work at Grasslands Hospital, Valhalla, New York; hospital work at Blythedale Children's Hospital, Valhalla, New York and welfare work at Cardinal McCloskey School and Home, White Plains, New York. (It is to be noted that two of the above jobs had been submitted by the defendant in his SSS Form 152 received by the Board on September 15, 1969, i. e., Grasslands Hospital and Cardinal McCloskey School and Home.) Having received no reply to its letter of March 27, 1970, the Board notified the defendant, by letter, to be present at a meeting of the Board to be attended by a representative of the State Director. After several adjournments, this meeting was held on October

22, 1970. At this meeting, the defendant refused to accept any of the three alternatives submitted by the Board in its letter of March 27, 1970 and also stated that he would accept no civilian employment in lieu of military service— not even employment with the New York City Department of Social Services. The Board minutes of this meeting record the following:

> "Discussion with the registrant revealed that he felt he could not, at this time, in good conscience accept any of the positions offered to him. . . . *Registrant stated* that he applied for work with the Grasslands Hospital and Blythedale Children's Hospital and there were openings but *he cannot accept alternate work in lieu of induction.* Registrant requested to work Social Services in Feb. 1970 but work was not approved by board members. Board members still feel that this work is not appropriate. Mr. Beaulieu stated *that if he were now ordered to work for Social Services, he would refuse.* . . . Registrant stated *that he refused and would not accept anything.* . . . Since Mr. Beaulieu's lottery number has been selected, the Local Board has determined that Institutional work at Grassland Hospital, Valhalla, New York, is appropriate for the registrant to perform in lieu of induction into the Armed Forces and hereby directs the issurance [sic] of an order to report for Civilian work. . . . Registrant refused. . . . The registrant was requested to make a written statement of his refusal, but, he did not want to put anything in writing at this time." (emphasis added)

On December 28, 1970, the defendant was ordered by the Board to report for civilian work at Grasslands Hospital. When he failed to do so, the Board reported the matter to the United States Attorney for the Eastern District of New York on June 28, 1971. On August 29, 1972 he was indicted by a Grand Jury for the Eastern District of New York in the above-entitled action for failure to report for civilian service in lieu of military service.

■ Defendant, in addition to his first contention, claims that the refusal of the Board to classify him II–A (occupational deferment) was without basis in fact. 32 C.F.R. § 1622.22(a) provided that:

> "(a) In Class II–A shall be placed any registrant whose employment in industry, or other occupation or employment, or whose continued service in an office . . . under the United States, or any State, Territory, or possession, or the District of Columbia, or whose activity in research, or medical, scientific, or other endeavors is found to be necessary to the maintenance of the national health, safety or interest."

32 C.F.R. § 1622.23(a) further provided that:

> "(a) Except as otherwise provided in paragraph (b) of this section [not relevant to the instant case], a registrant's employment in industry or other occupation, service in office, or activity in research, or medical, scientific, or other endeavors, shall be considered to be necessary to the maintenance of the national health, safety, or interest only when all of following conditions exist:
>
> (1) The registrant is, or but for a seasonal or temporary interruption would be, engaged in such activity.
>
> (2) The registrant cannot be replaced because of a shortage of persons with his qualifications or skill in such activity.
>
> (3) The removal of the registrant would cause a material loss of effectiveness in such activity."

In support of defendant's request for an occupational deferment, by letter dated September 10, 1969, defendant asked that two letters submitted to the Board by Unit Supervisors of the New York City Department of Social Services in

April of 1969 and a letter dated August 19, 1969, submitted by Martin Morgenstern, President of the Social Services Employees Union Local 371, be considered as establishing his entitlement to the occupational deferment.

These letters do not satisfy the criteria set forth in 32 C.F.R. § 1622.23(a) so as to entitle the defendant to a II–A deferment. They do not establish that he cannot be replaced or that his removal "would cause a material loss of effectiveness" in the New York City Department of Social Services. *See,* United States ex rel. Galasso v. Commanding Officer, 323 F.Supp. 4 (E.D.N.Y.1970), aff'd, 438 F.2d 339 (2d Cir. 1971). *See also,* United States v. Farrell, 443 F.2d 355 (9th Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed.2d 93 (1971); Wallace v. United States, 435 F.2d 12 (9th Cir. 1970); United States v. Kanner, 416 F.2d 522 (9th Cir. 1969). Since the defendant did not establish a prima facie entitlement to the II–A classification, the Board's rejection of his requested occupational deferment without reasons was adequate. Wallace v. United States, *supra;* United States ex rel. O'Neill v. Neff, 326 F.Supp. 1010 (W.D.Pa.1971); United States ex rel. Galasso v. Commanding Officer, *supra.*

The failure of the Board to classify the defendant II–A was not without basis in fact. Therefore, the defendant's second contention is without merit.

A thorough consideration of the Board's file with reference to the defendant demonstrates a manifested intransigent attitude on the part of the defendant, first to perform any civilian work other than his then present employment as a caseworker with the New York City Department of Social Services and, ultimately, a total disassociation from the entire Selective Service System and a refusal to perform any civilian work in lieu of military service. In light of his declaration at the Board meeting of October 22, 1970, it would appear that he would have refused to perform any civilian work anywhere, as a I–O registrant; that he always intended to repudiate the entire Selective Service Act, yet ostensibly sought a class II–A classification under that Act. One forms a very strong impression that this defendant was playing games with the Board.

Nevertheless, two recent opinions suggest that, despite the defendant's stratagems, the Board must be faulted because the Board's file does not record whether or not it considered the national interest clause of 32 C.F.R. § 1660.21(a).

In United States v. Trumpler, 468 F. 2d 1374 (3d Cir. 1972), the District Court had made a finding that the Local Board had not given consideration to the national interest clause of § 1660.21(a) in connection with the defendant's request that his job at Elwyn Institute be considered as alternative service. The Board had denied this request on the ground that his civilian work should be performed outside of the community in which he resides and should constitute a disruption of his normal way of life somewhat comparable to the disruption of a registrant who is inducted into the Armed Services. The Board followed the mandate of Local Board Memorandum No. 64 which instructed local boards "whenever possible" to require that civilian work be performed outside the community in which the registrant resides and that the civilian work should constitute such a disruption. Nevertheless, the District Court held that the failure of the local board to consider the national interest exception of 32 C.F.R. § 1660.21(a) was harmless error because the defendant had not established a prima facie entitlement to that exception. On the defendant's appeal from the judgment of conviction, the Court of Appeals held "that the failure of the local board to consider the defendant for the exception requires reversal of the defendant's conviction . . . ." *Id.* at 1375.

In Horey v. Tarr, 470 F.2d 775 (2d Cir. 1972) the plaintiff, a resident of a suburb of Buffalo who was classified I–O, was assigned by his local board to perform alternative civilian work in Rochester, 60 miles from Buffalo. Aft-

er his discharge from that job, he began working at Terrace House, a facility in Buffalo for homeless alcoholics and so notified State Selective Service Headquarters, which had taken over the matter of his assignment. Having been ordered to report to the Albany Medical Center Hospital to complete his civilian work obligation, upon the ground that Selective Service Regulations did not permit him to perform his civilian work in Buffalo or within commuting distance therefrom, the plaintiff instituted an action to enjoin the defendants from recommending criminal prosecution; seeking approval of his employment at Terrace House and a declaration that Local Board Memoranda Nos. 64 and 98 (in effect when he was ordered to report for work at Albany but which were cancelled by the Director on February 8, 1972 after the plaintiff instituted his civil action) were null and void. The Court of Appeals reversed the order of the district court granting the Government's motion to dismiss the complaint. It held that Local Board Memoranda Nos. 64 and 98 were invalid because they curtailed 32 C.F.R. § 1660.21(a) by giving no consideration to the unless or national interest clause of § 1660.21(a).[7] "These informal Memoranda are invalid to the extent that they were inconsistent with, and prevented an exercise of discretion mandated by, the officially promulgated regulations of the Selective Service System." Id. at 777.

"Of course, work outside of the registrant's community is indeed the general rule, but a conscientious objector is entitled to have the local board (or, under the amended rules, the state director) consider whether or not a registrant's work in his home community is 'desirable in the national interest,' with all relevant factors taken into consideration. The appellant was entitled, as an explicit right, to have the nature and scope of his employment in Buffalo considered and ruled upon in light of this exception." Id. at 777.

In Horey, supra, the court held that "[t]he failure of Selective Service to consider its national interest clause of the regulation was clear error and requires that the case be remanded to the district court with the direction that it be resubmitted to the State Director of Selective Service for determination," pursuant to the revised Selective Service Regulations, 32 C.F.R. § 1660.1 et seq. Id. at 777.

Although the Board's record in the instant case does not record specifically that the Board did not consider the national interest clause of 32 C.F.R. § 1660.21(a), there is an inescapable inference to be drawn from the fact that the Board was directed by the State Director of Selective Service to consider the defendant's request for work at the New York City Department of Social Services, not in the light of the national interest clause of 32 C.F.R. § 1660.21(a) but, rather, in conformity with Local Board Memorandum No. 64 and that the Board did just that.

The facts in the instant case differ from those in Trumpler and Horey, in that the defendant Beaulieu though professing a willingness to render alternative civilian service in lieu of military service, only as a caseworker with the New York City Department of Social Services, finally declared himself (in his letter to the President and, even more specifically at his meeting with the Board on October 22, 1970) as refusing to perform any ordered alternative civilian service anywhere; that he would not comply with any order of the Board to perform any alternative civilian work. It would appear that, if he receives a

---

7. Local Board Memoranda Nos. 64 and 98 were cancelled by the Director after the defendant was ordered on December 28, 1970 to report for work at Grasslands Hospital, and before he was indicted. 32 C.F.R. § 1660.21(a) was revised and redesignated § 1660.6 as part of a new set of regulations, 32 C.F.R. § 1660.1 et seq., promulgated December 10, 1971, after the defendant was so ordered to report and before he was indicted.

subsequent order from the Director to perform alternative civilian service, he will persist in his intransigent attitude. This, however, is a matter for another day.

 The opinion of this Circuit in *Horey, supra,* seems to suggest that, even on the facts in this case, the indictment should be dismissed on the ground that the Board's disregard of the clear and express provision of 32 C.F.R. § 1660.21(a) and the brushing aside of the defendant's right to have it considered in his case were not only clear error but "constituted 'blatantly lawless' acts by Selective Service." *Id.* at 777.

This Court considers itself bound by *Horey* and, therefore, regretfully grants the defendant's motion to dismiss the indictment.

This is an order.